Suttle and wife vs. Calwell et al.

for a new trial on the ground, among others, that the Court erred in admitting the evidence of Gill as above set out. The Court refused a new trial, and that is complained of as error.

WEST and VASON & DAVIS, for plaintiff in error.

WARREN & FLOYD, for defendant.

———

John B. SUTTLE and wife, plaintiffs in error, vs. JAMES CAL-
WELL and others, defendants in error.

[1.] When a verdict of the jury is clearly and manifestly contrary to evidence, a new trial ought to be granted.

[2.] Will the guardian of a minor child be allowed to take a conveyance from his father and her father, to all of his property, which transfer is founded on no good and valuable consideration, thus depriving him of the means of maintaining and educating his minor child, and then appropriate the estate of his ward for this purpose? *Quere?*

Debt. In Fulton Superior Court. Tried before Judge WARNER. April Term, 1866.

This action was by the plaintiffs in error against the defendant, as securities on a guardian's bond. The bond was given by one Thomas Griffin, on the third of November, 1851, as guardian of Susan M. Griffin, (now Mrs. Suttles) a daughter of Leroy Griffin, Sr., with the defendants as securities. Thomas Griffin, the principal in the bond, was not made a party to the action, because beyond the jurisdiction.

At the trial the plaintiffs introduced the bond, and a return made by the guardian to the Court of Ordinary, in September, 1853, showing the following debit and credit:

Dr. 1851, November 18.—To cash received of Josiah Mobley, administrator of A. Mobley, deceased........................................ $505.00

Cr. By cash paid Griffin & Caldwell.......... $34.25

They also introduced the following additional testimony:

*James E. Dicken*—Was acquainted with Leroy Griffin, Sr., from 1853 to 1857, in which latter year he left Fulton county and went to Texas, taking with him eleven negroes, one or two good mules, and a small mare. He was, witness thinks, prior to 1857, amply able to support, clothe, and educate his children, as he had in his possession some twelve or thirteen negroes, over eight hundred acres of land, a saw mill, and a quantity of stock. Witness does not know of Thomas Griffin and James Caldwell buying his land and negroes, but has heard Caldwell say that he and Thos. Griffin had taken hold of his property to save it for the family, and was afraid they would not be thanked for it.

*Isabella M. Dicken*—Her father, Leroy Griffin, Sr., was, she thinks, amply able to support and educate his family

prior to 1857, in which year he moved to Texas. He had fifteen negroes, most of them good hands, over eight hundred acres of land in Fulton county, where he lived, a saw mill, and stock, horses, cattle, and hogs, sufficient to keep up his farm, and was not in debt until he went security for his son, Edward Griffin. He carried with him to Texas eleven or twelve negroes, one or two mules and a sorrel mare.

Witness does not think that James Caldwell and Thomas Griffin had means sufficient to pay for the land, or negroes either; for she knows that after Caldwell married her sister, her father sold a negro to pay Caldwell's debts. She heard Thomas Griffin say that he was afraid the old man had stood security for Edward Griffin, and that he and Caldwell were going to take hold of his property to hold it for the benefit of the family.

*Leroy Griffin, Jr.*—His father, Leroy Griffin, Sr., was a man in good circumstances—owned between 800 and 1,000 acres of land, fifteen negroes, and plenty of stock; had a good plantation and saw mill, made good crops, and was able to support and educate his children. He continued in possession of his land and negroes until he removed to Texas in the latter part of 1857, and then took off with him eleven of the negroes, two mules, and a sorrel mare.

Defendants introduced the following evidence:

1. A deed and a bill of sale from Leroy Griffin, Sr., to Thomas Griffin and James Caldwell, both dated May 13th, 1851; the deed conveying four lots of land and twenty-five acres of another lot, in (then) DeKalb county, and one lot in Paulding county; and the bill of sale conveying thirteen negroes—all the negroes which were then owned by Leroy Griffin, Sr. The consideration expressed in the deed was $4,100, and in the bill of sale $6,500.

2. The returns made by the guardian to the Court of Ordinary, beginning with that one introduced by the plaintiffs, and showing expenditures amounting in the aggregate to $600.30.

The jury returned a verdict for the defendants; and the

plaintiffs moved for a new trial on the grounds that the verdict was contrary to law, contrary to evidence, and contrary to the charge of the Court.

A new trial was refused; and this is complained of as error.

EZZARD & COLLIER and BARNETT & BLECKLEY, for plaintiffs in error.

CLARKE, for defendants.

LUMPKIN, C. J.

Mr. Clarke, attorney of the defendants, by written brief, objects to the sufficiency of the record. He complains that all of the returns made to the Ordinary are not sent up by the clerk to this Court.    After inspecting the record, this objection does not appear to be well taken.   It may be an oversight in us, but if attorneys choose to avail themselves of the privilege granted by the Legislature of appearing by brief alone, they must take the consequences.   A diminution of the record should be suggested at the proper time, and in the manner prescribed by the rules of Court, and if well taken, a mandamus should be moved for against the proper officer to have the deficiency supplied.   It would seem from the certificate of the clerk of the Superior Court that he transmitted to this Court all the papers in his office, applicable to this case.   And if there be a return made to the Ordinary which has not been filed, as a part of the evidence, in his office, it is not the fault of the clerk.

We have carefully inspected the calculation submitted to us, and if the returns are correct and complete, the verdict of the jury is undoubtedly wrong.   They show a balance due the plaintiffs of between one and two hundred dollars.

But is this the measure of the plaintiffs' rights?   We think not.   The principle of law is not disputed, that if the

parent of the ward has property to support his child, her estate can not be taken for this purpose.

It is in evidence from the testimony of Mrs. and Mr. Dickens, the daughter and son-in-law of Leroy Griffin, that the father not only had property sufficient, but that he provided well for the maintenance of his children. This being his situation, the evidence shows that property to the amount of $10,600, was transferred to Thomas Griffin, his son and the guardian of Mrs. Suttle; and we infer from the testimony, that this transaction was not *bona fide*, but was made to save the property from some threatened liability growing out of the securityship, or to cover it up in some other way.

Will a Court, under these circumstances, allow the guardian thus to strip the common father of the means of maintaining and educating his daughter, and to appropriate the whole of the small estate left her by her uncle Mobley, for this purpose?

There may be something in this case not apparent from the proof; indeed, this would be inferable from the verdict of the jury and the refusal of the Court to grant a new trial.

But the record and evidence as sent up to us, leads somewhat to a different conclusion: and, judging by this alone, we are constrained to grant a new trial.